Lawanda Parnell, Michael Douglas, Merced Dominguez

Residents of 8th and Harrison, Berkeley CA

FILED
DEC 11 2023
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Francisco or Oakland Division)

| | |
|---|---|
| LAWANDA PARNELL, MERCED DOMINGUEZ, and MIKE DOUGLAS<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BERKELEY,<br><br>Defendants. | Case No. C23-06379<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Judge: |

Plaintiffs LAWANDA PARNELL, MERCED DOMINGUEZ, MIKE DOUGLAS ("Plaintiffs") complain and allege as follows:

## I. INTRODUCTION

1. Plaintiffs bring this case seeking to stop defendant City of Berkeley from evicting unhoused Berkeley residents from the area around the intersections of 8th and 9th Streets and Harrison Street and Gilman Street ("8th and Harrison"), one of the few remaining locations in Berkeley where unhoused individuals have built an established community, until there is adequate shelter or housing available to those residents. The closure of the encampment is currently scheduled for the December 12, 2023.

2. Plaintiffs are unhoused individuals who have resided in the area of 8th and Harrison for several years. Many of them have significant physical and/or mental health disabilities. The area is largely commercially zoned, and unhoused Berkeley residents have been living there for over ten years with little negative interaction with neighbors and city officials.

3. On the late afternoon of Friday, December 8, 2023, defendant City of Berkeley posted several notices on 8th Street between Lower Cordornices Path and Harrison Street in Berkeley, California, stating that unhoused residents living in the area would be subject to an encampment closure action beginning December 12, 2023. These notices, in combination with other notices posted by the City earlier in the week, will result in the closure of the entire 8th and Harrison encampment on December 12, 2023. They state long term shelter offers will be made the day of the eviction and threaten arrest if individuals do not comply.

4. The timing of this closure is unconscionable. Winter is nearly here and the cold and rainy season has already begun. There is not enough shelter in the City of Berkeley for the noticed residents. The notice was posted late on a Friday for a closure Tuesday, making it impossible for residents to access services during most of the notice time, and making it incredibly difficult for them to advocate for themselves.

5. There are currently at least 42 residents impacted by the closure of 8th and Harrison. Plaintiffs have either physical or mental health disabilities that will prevent them from being able to move their belongings in such a short time frame. There is no shelter available to

residents through the 211 system, and the warming center is not open. The shelter that the City seems to have set aside for 8th and Harrison residents, the Old City Hall, has only 29 beds. It is also not accessible to residents with physical and mental disabilities. The City knows that there are many individuals at 8th and Harrison who cannot access this shelter given their disabilities.

6. In response, Plaintiffs bring this lawsuit seeking to stop defendant CITY OF BERKELEY from displacing the residents of 8th and Harrison until such time as there is accessible shelter or housing made available for them. Plaintiffs also ask the Court enjoin defendant CITY OF BERKELEY from destroying their property, as it has been wont to do in prior evictions and protect Plaintiffs from the imminent and irreparable injuries they face.

## II.   JURISDICTION AND VENUE

7. Plaintiffs' claims arise under the laws and Constitution of the United States, including 42 U.S.C. § 12132 and 42 U.S.C. § 1983. Therefore, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4).

8. The Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Federal Rules of Civil Procedure 57 and 65, authorize this Court to grant Plaintiffs the declaratory and injunctive relief they seek here. An award of attorneys' fees is authorized pursuant to 42 U.S.C. § 1988(b).

9. This Court has supplemental jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiffs' state law claims share common operative facts with their federal law claims, and the parties are identical. Resolving Plaintiffs' federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

10. Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because defendant CITY OF BERKELEY is located in this district and a substantial part of the events and/or omissions were committed in this district.

11. Because the events and omissions giving rise to Plaintiffs' claims occurred in Alameda County, this case should be assigned to the Northern District's Oakland or San Francisco Division, pursuant to N.D. Cal. L.R. 3-2(d).

### III. THE PARTIES

12. Plaintiff Michael Douglas is a person with a disability. He is 62 years old. He struggles with anxiety and other mental health issues and has an emotional support pet, a dog, who is his whole world. He has been homeless and living in Berkeley for about 20 years. He recently was kicked out of one of the hotel programs run by Berkeley but would accept shelter in the Berkeley Inn or tehe Golden Bear. However, at the most recent eviction of 8th and Harrison on December 5, 2023, he was told the only shelter available to him is the Old City Hall, which he cannot access because of his disabilities and his emotional support pet. At that eviction, he lost almost all of his belongings, including his shelter. He was not offered a new tent or any kind of replacement shelter after this eviction. Mr. Douglas currently lives on the East part of 8th Street in between Harrison and UC Village. He received a notice that he will be subject to another closure action on Friday, December 8, 2023. The date of the Closure is December 12, 2023. Mr. Douglas has no idea where he will go on December 12, 2023.

13. Ms. Lewanda Parnell is currently camped on 9th street between Gilman and Harrison streets. She has a physical disability that causes her to fall down frequently and a nervous condition. She cannot access transitional shelter because of her disabilities. She cannot follow orders because of her nervous condition and she relies on family visits to keep her healthy. She's been forced to move many times by the city and each time it is traumatic. Her only income is from recylcing, which she could not do from a city shelter because they would not allow her to collect reclycling. She would have to give up her only source of income to move. She has nowhere to go. (Parnell Declaration)

14. Ms. Merced Dominguez lives in her RV on 8th Street btween Harrison and Gilman streets. She has a disability that limits her mobility called erative splondylitus. She relies on her community for support and needs to stay in the location because the services she receives, including housing navigation from BACS. The only shelter offer she has received is at a

1 transitional shelter that is upstairs. She cannot access this because she has a mobility disability. She does not know if she needs to move her RV because the notice isn't clear, but she has nowhere else to go and will face immense harm if separated from her community. (Dominguez Dec).

15. Defendant CITY OF BERKELEY is a municipal corporation organized under the laws of the State of California. Upon information and belief, it provides the shelter and housing services through its contracts, it sets the policies for evictions and property destruction, and it is in all ways responsible for the violations of the laws alleged herein.

## IV. FACTUAL ALLEGATIONS

### A. History of the Harrison Street Encampment

16. Unhoused individuals have been residing at 8th and Harrison for at least the past ten years. Residents moved to the area because it is largely commercial, and is also close to necessary establishments like grocery stores and gas stations.

17. The 8th and Harrison community is located in the area loosely bounded by 6th street, Gilman Street, 9th Street, and Lower Cordonices Path.

18. Many residents, including Plaintiffs, moved when defendant CITY OF BERKELEY and other government agencies evicted them from other encampments in the area. Over the past several years, defendant CITY OF BERKELEY and other agencies have closed a large number of encampments, such as the Berkeley Marina, Seabreeze (location), Ashby Shellmound (near the Ashby freeway exit off of I-80). Defendant CITY OF BERKELEY has also begun to more aggressively enforce parking regulations such as 72 hour and 4 hour parking limits that target vehicularly housed residents, decreasing the number of locations individuals who live in their vehicles can park. These laws were rarely enforced in this area previously. As a result, unhoused Berkeley residents have very few locations where they can gather as communities in the area for safety and mutual support.

19. The community at 8th and Harrison has a well established system of mutual aid and support. Residents rely on each other to watch each other's belongings while individuals work or rest, to complete chores, obtain food and water, keep each other safe, and keep each

1  other company. Many residents have serious mental and physical health needs, including
2  Plaintiffs DOUGLAS, PARNELL, and DOMINGUEZ and so this network of support is critical
3  to their survival.
4     20.   As of December 11, 2023, approximately 42 individuals reside in the area around
5  8th and Harrison.

   **B.   Current Lack of Availability at Berkeley Shelters**

7     21.   According to the most recent statistics from 2022, there are currently over 1,000
8  people in Berkeley experiencing homelessness.[1]
9     22.   Unhoused persons report that financial pressures including evictions, foreclosures,
10 rent increases, and job loss are among the top five reasons they became homeless.[2] Among
11 Berkeley residents experiencing homelessness, 43 percent have a disabling condition and are
12 increasingly reporting that they are dealing with more than one major health challenge.[3] In
13 Berkeley, 45 percent of the unhoused population is Black, even though only 8 percent of its total
14 population is.[4]
15    23.   Berkeley's shelters have been overwhelmed by this situation. There are very few
16 shelter options available to Berkeley residents generally.
17    24.   On December 5, 2023, City official Okeya Vance represented that the shelter
18 option available to 8th and Harrison residents was the Old City Hall emergency shelter located in
19 downtown Berkeley. This shelter has 29 beds. It is unclear how many of those beds are available
20 at this time, but there are certainly more than 29 individuals living at 8th and Harrison.
21    25.   Further, the City knows that there are numerous residents at 8th and Harrison who
22 cannot access this shelter because of their mental and physical disabilities.
23    26.   On December 5, 2023, Brigitte Nicoletti asked city employee Okeya Vance if one
24 of the residents who wanted shelter, Dean Bowman, who was using a wheelchair, could access

---

[1] https://everyonehome.org/main/continuum-of-care/everyone-counts/
[2] *Supra*, note 5.
[3] *Ibid.*
[4] *Ibid.*

5

the Old City Hall shelter. Ms. Vance said that he could via an elevator. The resident ultimately decided he could not access the congregate site because of his mental health issues.

27. However, another 8th and Harriosn resident, Jerammy Daniel, who cannot walk and uses a wheelchair, did ask the City to take him to the Old City Hall shelter. He was brought there by Tony Alcutt. He was allowed inside, where he was overjoyed to find that it was warm, and allowed to shower across the street. Then, program staff told him he could not stay the night because the facility does not have an ADA accessible bathroom and they were worried about code violations if he remained there. He was exited from the program, and went back to living in his vehicle at 8th and Harrison, where he spent several freezing nights as his car windows have been vandalized. He is still staying at 8th and Harrison and will have nowhere to go.

28. Another resident, Rufus Lee White Jr. also uses a wheelchair and will similarly not be able to access the Old City Hall Shelter. Upon information and belief, Mr. Bowman similarly will not be able to access the shelter.

29. Many other residents have serious mental health disabilities that will prevent them from accessing the warming center as well. The City is aware generally of the high level of mental health disability in the community, and it has also received numerous specific accommodation requests from residents stating that they cannot access this type of shelter.

30. Those who have RVs or other large vehicles have nowhere to go. There is no Safe Parking Lot in the City of Berkeley for RVs, and there is nowhere that they can legally park their vehicle in the City of Berkeley without being subject to citation and tow because many residnets do not have the funds or ability to register and run their vehicles. Moving vehicles every 3 days to comply with the 72-hour ordinance is not possible for those who have mechanical issues with their vehicles, and for those with health or physical disabilities like Mr. Jeffords doing so would be exceedingly difficult. The City is not providing for accommodations to enforcement of parking ordinances to any Plaintiffs or other individuals with disabilities.

31. The majority of residents of 8th and Harrison have nowhere to go and because the notices are vague and have not been delivered to individuals or attached to tents or vehicles, residents are not even sure if these notices apply to them.

C. **Berkeley's Policy and Practice regarding Destruction of Property**

32. Despite the lack of available shelter, defendant CITY OF BERKELEY has engaged in a policy and practice of evicting unhoused residents throughout the city, and, in the process, destroying their shelters, vehicles, and other belongings. Unhoused residents often are forced to other areas of the city without adequate shelter to protect themselves while living outdoors, and often after having their belongings destroyed by the city. Witnesses who have lived in the 8th and Harrison community for many years have observed city officials demolishing people's shelters, confiscating their tents, and leaving people exposed to the elements. This has been done both in the pouring rain and in extreme heat.

33. Witnesses, have also observed employees of defendant CITY OF BERKELEY destroying property even while the owners of that property have been telling them that it belongs to them and that they want to keep it.

34. Witnesses have observed individuals be arrested by CITY OF BERKELEY police officers for refusing to permit the destruction of their belongings.

35. One recent example of this policy and practice occurred at 8th and Harrison within the last year.[5] On September 30, 2022, residents received a "Notice of Imminent Health Hazard and Emergency Abatement," stating that the abatement would take place just four days later, on October 3, 2022—much like the sudden action threatened by the City this weekend.

36. On October 3, 2022, defendant CITY OF BERKELEY destroyed 29 tents, three structures, and impounded and crushed four vehicles that unhoused residents of the community relied upon for shelter. Two residents were hospitalized, one was arrested and jailed for three days before the charges against him were dropped, and many residents experienced panic attacks and trauma.

37. Peter Radu, assistant to the City Manager of Berkeley, later publicly apologized for the City's actions, claiming the City would work with people as opposed to against them

---

[5] https://www.sfpublicpress.org/everything-is-gone-and-you-become-more-lost-12-hours-of-chaos-as-berkeley-clears-encampment/

moving forward.[6] Nonetheless, the City is once again repeating its pattern of destructive and illegal conduct again, less than a year later.

At an eviction on November 7, 2023, at 8th and Harrison, the City arrested a resident, Erin Spencer, for illegal lodging while he was actively trying to leave with his most important belongings placed on carts. They then proceeded to destroy the majority of the material on the carts and the entire built structure and everything in owned by Mr. Spencer. They then destroyed the majority of the belongings of other residents, including Mike Douglas, Saree, Popcorn, and Tom. They did not make them offers of shelter until prompted by Brigitte Nicoletti. The only made to Mike was to congregate shelter that Ms. Nicoletti specifically told them Mike could not access.

At an eviction on December 5, 2023, at 8th and Harrison, the City once again destroyed the majority of the residents' shelter and belongings. Residents Erin Spencer, Saree, Popcorn, and others living with them had their entire shelter destroyed. They were left with no source of shelter. They ended up finding tarps to cover themselves with but were soaked by the rains the following week. Residents Mike Douglas and Dean Bowman lost most of their belongings and were left on the side of the road.

38. By closing encampments when people have no place to go by not allowing sufficient time for outreach workers to contact people being displaced and find them safe, accessible housing, and by leaving people evicted from those encampments no choice but to move to more dangerous locations where the health and safety at risk, Berkeley will be placing people whom it evicts in harm's way. Berkeley has created dangers for their health and safety. These dangers are particularly acute for the many people who have been displaced with no place to go who have serious mental and physical disabilities. People with disabilities are harder to place than people who are able-bodied and do not have mental health needs. They require more time and more intensive assistance because of their disabilities.

---

[6] https://www.sfpublicpress.org/berkeley-apologizes-for-aggressive-homeless-encampment-sweeps-promises-reforms/

8

39. The City has no urgent reason to clear 8th and Harrison in the manner described in the posted notices. The City has already performed the health and safety abatement it posted for back in September 2023. Further, the potential hazards do not negate residents' rights under federal and state law including the warrantless and unlawful seizure and destruction of Plaintiffs' and other residents' property.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Exposure to State-Created Danger
Under the Fourteenth Amendment to the U.S. Constitution
Pursuant to 42 U.S.C. § 1983**

40. Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

41. Governmental action that affirmatively places a person in a position of danger deprives that person of substantive due process rights guaranteed by the Fourteenth Amendment to the United States Constitution. *See* U.S. Const. Amend. XIV.

42. Local governments violate the substantive due process rights of unhoused people when they place unhoused individuals in more vulnerable situations by confiscating the survival belongings that they use for shelter, warmth, and protection from the elements. *See Santa Cruz Homeless Union*, 514 F. Supp. 3d 1136 at 1144-1145; *Sanchez*, 914 F. Supp. 2d at 1101-02.

43. The City has a policy, custom, and practice of removing unhoused people from public spaces and of seizing and destroying their personal property, such as tents and other survival gear, that is necessary for their protection. The City engages in these practices without ensuring that accessible shelter and/or housing options are available to unhoused individuals.

44. Without any other available accessible option for shelter and without their tents and survival gear unhoused individuals are forced to live exposed to the elements, without protection from heat, cold, wind, and rain. Individuals who are forced to leave established encampments are also separated from community support, including food and water donations, community safety networks, and access to service providers and their neighbors' support and company. This severely jeopardizes their physical and mental health.

45. The City's actions have placed Plaintiffs and others in a more dangerous situation than the one in which they were found and created and exposed them to a danger which they would not have otherwise faced. *Martinez*, 943 F.3d at 1271.

46. The City knows or should know that its actions endanger the health and safety of unhoused individuals, and the City has acted with deliberate indifference to this danger. The City's conduct is shocking to the conscience and further imperils the health and safety of unhoused people.

47. The City's policies and practices have and will continue to put Plaintiffs in immediate danger in violation of their substantive due process rights.

48. WHEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION

**Exposure to State-Created Danger**
**Under Article I, § 7(a) of the California Constitution**
**Pursuant to 42 U.S.C. § 1983**

49. Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

50. Governmental action that affirmatively places a person in a position of danger deprives that person of substantive due process rights guaranteed by the California Constitution. Cal. Const., art. I, § 7(a). The substantive due process protections under the California Constitution are at least as expansive as those under the U.S. Constitution.

51. The City's policy, custom, and practice of removing unhoused people from public spaces and of seizing and destroying their personal property, such as tents and other survival gear, endangers the health and safety of unhoused people in a way that shocks the conscience. The City knows or should know that its actions endanger the health and safety of unhoused individuals.

52. The City's policies and practices have and will continue to put Plaintiffs in immediate danger in violation of their substantive due process rights under the California Constitution.

53. WHEREFORE, Plaintiffs pray for relief as set forth below.

# THIRD CAUSE OF ACTION

**Property Destruction: Unreasonable Search and Seizure
Under the Fourth and Fourteenth Amendments to the U.S. Constitution
Pursuant to 42 U.S.C. § 1983**

54. Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

55. The Fourth Amendment prohibits local governments from summarily seizing and destroying the personal property of unhoused individuals because individuals have a right to notice and an opportunity to be heard. *See Lavan v. City of L.A.*, 797 F. Supp. 2d at 1012 (declaring that the Fourth Amendment protects homeless persons from government seizure and summary destruction of their unabandoned, but momentarily unattended, personal property), *aff'd*, *Lavan*, 693 F.3d 1022; *see also Lavan*, 693 F.3d at 1030 ("[E]ven if the seizure of the property would have been deemed reasonable had the City held it for return to its owner instead of immediately destroying it, the City's destruction of the property rendered the seizure unreasonable."); *Garcia v. City of L.A.*, 11 F.4th 1113, 1124 (9th Cir. 2021) ("our prior caselaw states clearly that the government may not summarily destroy the unabandoned personal property of homeless individuals that is kept in public areas").

56. The Fourth Amendment also prohibits local governments from summarily seizing and destroying or impounding vehicles of unhoused individuals regardless of how they are parked. "**Due process requires that individualized notice be given** before an illegally parked car is towed unless the state has a 'strong justification' for not doing so." *Grimm v. City of Portland*, 971 F.3d 1060, 1063 (9th Cir. 2020) (emphasis added); *see also Clement v. City of Glendale,* 518 F.3d 1090, 1094 (9th Cir. 2008) (explaining that imposition of the significant costs and burdens of towing cannot be justified as means of deterring illegal parking).

57. The City provided inadequate and confusing notice prior to the planned abatement on September 4, 2023. The Notice of Abatement was posted, not delivered to individuals as required by Berkeley Municipal Code. The notice does not provide individuals with guidance related to how to define the property they wish to keep, have stored, and discard. The Notice of

1  Violation was also only posted and does not apply to a clearly defined area, and does not include
2  an enforcement date. Thus the notices are vague and invalid.

3      58.    Further, The City has an unwritten policy, custom, and practice of seizing and
4  destroying unhoused people's personal belongings. The City destroys such property even if that
5  property poses no threat to public health and does not constitute evidence of a crime.

6      59.    The City's policy, custom, and practice is to evict unhoused residents and, in the
7  process, to destroy their belongings. Witnesses who have worked in the community for many
8  years have observed city officials demolishing people's shelters, confiscating their tents, and
9  leaving people exposed to the elements. This has been done both in the pouring rain and in
10 extreme heat. Witnesses have also observed employees of the City destroying property even
11 while the owners of that property have been telling them that it belongs to them and that they
12 want to keep it.

13     60.    The City's unconstitutional policies and practices continue, subjecting Plaintiffs
14 to persistent and imminent threat of having their personal property seized and destroyed in
15 violation of the Fourth Amendment.

16     61.    WHEREFORE, Plaintiffs pray for relief as set forth below.

### FOURTH CAUSE OF ACTION

**Property Destruction: Unreasonable Search and Seizure  
Under Article I, § 13 of the California Constitution**

62.    Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

63.    The California Constitution involves even greater protections than the Fourth Amendment with respect to property seizures. See Cal. Const., art. I, § 13; In re Lance W., 37 Cal. 3d at 879.

64.    Despite The City's written policies to the contrary, it has an unwritten policy, custom, and practice of seizing and destroying unhoused people's personal belongings. The City destroys such property even if that property poses no threat to public health and does not constitute evidence of a crime.

65. The City's unconstitutional policies and practices continue, subjecting Plaintiffs to persistent and imminent threat of having their personal property seized and destroyed in clear violation of the more expansive protections under Article I, Section 13 of the California Constitution.

66. WHEREFORE, Plaintiffs pray for relief as set forth below.

## SEVENTH CAUSE OF ACTION

**Infliction of Cruel and Unusual Punishment in Violation of Eighth Amendment**

**(42 U.S.C. 1983)**

67. The Eighth Amendment of the United States Constitution states, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." *Martin v. Boise*, 902 F.3d 1031, prohibits the criminalization of individuals for conditions related to their unhoused status if alternative shelter is not available to them. *Martin v. Boise*, 902 F.3d 1031, 1035-36. Criminalization in the context of *Martin* encompasses "credible threat of prosecution" and "credible risk of being issued a citation." *Id.* at 1042.

68. By posting a notice that threatens arrest for the potential violation of the Berkeley Municipal Code related to unhoused individuals living conditions when there is not enough shelter for residents subject to the closure notice, let alone adequate shelter for the Plaintiffs and other residents that meets their disability-related needs, defendant CITY is violating Plaintiffs' rights under the Eighth Amendment. Further, arrests of individuals refusing to permit the destruction of their belongings at previous evictions overseen by defendant CITY increases the credible risk of arrest for the Plaintiffs as they cannot move their belongings by September 4, 2023.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

**Temporary Restraining Order**

A. Enter a Temporary Restraining Order to maintain the status quo until the Court has an opportunity to hear a request for fuller relief, including a preliminary injunction, so that

Plaintiffs can demonstrate that there are serious questions going to the merits of their claims, and that the balance of hardships tips sharply towards them since there is a likelihood of irreparable injury and an injunction is in the public interest.

**Declaratory Relief:**

A.   Declare that defendant CITY's removal of unhoused people from public property and seizure of their necessary survival gear, shelters, and vehicles, in the absence of adequate housing or shelter that accommodates their disability-related needs, violates their right to be free from state-created dangers under the Fourteenth Amendment to the U.S. Constitution and Article I, § 7(a) of the California Constitution;

B.   Declare that defendant CITY's ongoing seizure and destruction of the personal property of unhoused people violates the Fourth and Fourteenth Amendments to the U.S. Constitution; and Article I, §§ 7(a) and 13 of the California Constitution;

C.   Declare that defendant CITY's ongoing enforcement and seizure practices, parking enforcement, and shelter programs are government programs that discriminate against unhoused people with disabilities in violation of 42 U.S.C. § 12131 and Cal. Gov. Code § 11135;

**Mandate Relief:**

A.   Issue a mandatory order compelling defendant CITY to adequately train staff to stop enforcing ordinances against unhoused people and stop seizing their property except in conformance with the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution; Article I, §§ 7(a), 13, and 17 of the California Constitution;

B.   Issue a mandatory order requiring defendant CITY to submit to regular monitoring and compliance checks by the Court at defendant CITY's expense;

**Other Relief:**

A.   Grant Plaintiffs such further relief as the Court deems just and proper.

Dated: December 11, 2023                    Respectfully submitted,