UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEWANDA PARNELL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BERKELEY,<br><br>Defendants. | Case No. 23-cv-06379-EMC<br><br>**TEMPORARY RESTRAINING ORDER**<br><br>Docket No. 2 |

Before the Court is Plaintiffs' Motion for a Temporary Restraining Order (TRO) to enjoin the City of Berkeley (City) from evicting Plaintiffs from an encampment in Berkeley, CA. Previously, the Court granted the TRO until a hearing was possible. At the hearing, the City offered to provide Plaintiffs Mr. Michael Douglas and Ms. Lewanda Parnell with non-congregate housing that meets the basic needs of their respective disabilities. Because Plaintiffs now have suitable housing, the Court shall dissolve the TRO subject to a timeline that is workable for the Plaintiffs, as described below.

1. Background and Procedural History

Mr. Douglas and Ms. Parnell lived in tents around 8th and Harrison Streets in an in encampment in Berkeley, California. On December 5, 8, and 11, 2023, the City posted several notices stating that the unhoused residents in the area would be subject to an encampment closure action beginning December 12, 2023. The notices were posted on 8th Street between Cordonices Creek and Harrison Street, on property located on the East side of 8th Street between Harrison and Gilman Streets, and on the East and West side of 8th Street between Harrison Street and the UC Village.

Afterhours, on December 11, 2023, the Plaintiffs filed a Motion for a TRO requesting that

1   the Court enjoin the City from closing the 8th and Harrison encampment in Berkeley and from
2   removing the residents and their possessions from the encampment.  On December 12, 2023, this
3   Court issued an Order to Maintain the Status Quo.  By the time the City received notice of the
4   Order, it had mostly closed the encampment.  Mr. Douglas and Ms. Parnell have since reinstalled
5   their respective encampments at 8th and Harrison.

6   On Friday, December 15, 2023, the Court issued a TRO, enjoining the City's action until a
7   hearing was possible on Tuesday, December 19, 2023.  In its Order, the Court found that the
8   balance of hardships tipped strongly in favor of the Plaintiffs and that the Plaintiffs had a greater
9   likelihood of success on the merits, given that Plaintiffs were unhoused and disabled individuals
10  who were to be evicted from their encampment during the winter with no place to go.
11  Subsequently, in the hearing on Tuesday, December 19, 2023, and the continued hearing on
12  Thursday, December 21, 2023, the City promised to provide Ms. Parnell and Mr. Douglas with
13  non-congregate shelter that largely accommodates their respective needs, disabilities, and
14  limitations.

15  With respect to Mr. Douglas, the City offered him a non-congregate room at the Berkeley
16  Inn.  Mr. Douglas is permitted to keep his dog, Boy, with him at the Berkeley Inn.  Mr. Douglas
17  asked to receive a shelter handbook enumerating the program's rules before entering the program
18  to help ensure his success.  The City indicated it would be able to provide Mr. Douglas with a
19  shelter handbook, and the Court ordered the City to do so.

20  With respect to Ms. Parnell, the City has ensured a room is available for her at the Campus
21  Motel.  The City agreed to provide Ms. Parnell with the shelter's handbook that she can review
22  before entering the program.  Additionally, Ms. Parnell will have a place to store the bottles and
23  cans she collects as her income, so long as the recycling is not cardboard, flammable, or soiled.
24  To accommodate Ms. Parnell's disability, the City is going to modify the bathroom in her room to
25  provide her with grab bars around the toilet and in the shower.  The City is working to hire a
26  contractor to install the grab bars that Ms. Parnell needs.  Further, Ms. Parnell asked to be able to
27  cook her own food due to her anxiety of having other people handle/touch her food.  The City
28  represented that Ms. Parnell will have her own microwave.

2. <u>Plaintiffs Can No Longer Establish the Need for a TRO Based on the *Winter* Factors</u>

The traditional *Winter* standard for preliminary relief requires the movant to show that (1) it "is likely to succeed on the merits;" (2) it "is likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in [its] favor;" and (4) "an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit has created a "sliding scale" variant of the same standard: "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two Winter factors are satisfied." *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace*, Inc., 709 F.3d 1281, 1291 (9th Cir. 2013)).

Applying the sliding scale here, the showing on the merits has shifted in the City's favor because the Plaintiffs now have accommodations that meet their most basic needs. Whereas before, Plaintiffs constitutional rights were in danger of being violated given that they were being evicted with nowhere to go, now, Plaintiffs are being provided with non-congregate housing that largely accommodates their disabilities and limitations, so there likely is no constitutional or statutory violation.

The balance of hardships also tips in the City's favor. Mr. Douglas and Ms. Parnell are being provided shelter that will accommodate their basic needs, so they face little hardship. Conversely, the City initiated the eviction because it planned to fence-off the site of the encampment, make needed repairs, and permit the owners of the abutting property at 930 Harrison Street to install a "planting strip." Radhu Decl. ¶ 26; Chen Decl. ¶ 3. Keeping the TRO in place would further forestall the City's plan.

As for the two remaining Winter factors—whether the public interest favors preliminary relief and whether Plaintiffs will suffer irreparable harm without it—the remaining factors no longer indicate that the Plaintiffs should be granted relief. Whereas before, a short delay of a planned eviction to ensure the Plaintiffs had a suitable alternative was in the public interest, that is no longer the case. *Janosko v. City of Oakland*, No. 3:23-CV-00035-WHO, 2023 WL 187499, at

1  *4 (N.D. Cal. Jan. 13, 2023) ("[A] short, defined delay in the planned evictions is in the public

2  interest.").

3      On the record currently before the Court, the showing on the merits and the balance of

4  hardships tips in the City's favor.  Plaintiffs are no longer likely to suffer irreparable harm absent

5  preliminary relief and thus the granting of such relief is no longer in the public interest.  Therefore,

6  because Mr. Douglas' room at the Berkeley Inn is presently available, the TRO with respect to

7  him will expire at 11:59 P.M. on Monday, December 25, 2023.  Though Ms. Parnell's room at the

8  Campus Motel is available, it does not yet have the grab bars installed that she needs to

9  accommodate her disability.  Therefore, the TRO with respect to her will expire 48 hours after the

10 City files a confirmation with the Court that the grab bars have been installed in Ms. Parnell's

11 room.

13 **IT IS SO ORDERED**.

15 Dated: December 22, 2023

_____
EDWARD M. CHEN
United States District Judge